IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>   v.<br><br>WILLIAM C. BERETTA, *et al.*,<br><br>        Defendants.<br>_____ / | No. C 07-02930 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On October 31, 2008, the Court heard oral argument on the parties' motions for summary judgment. Having considered the arguments of counsel and the papers submitted, and for good cause shown, the Court DENIES defendants' motion and DENIES plaintiff's motion.

**BACKGROUND**

Plaintiff United States of America filed a complaint against defendants William C. Beretta, Jennifer Beretta, Max Day, and Tom's Septic Tank, Inc. on June 5, 2007. The complaint alleged that William Beretta had unpaid federal income taxes for the years 1987, 1988, 1989, 1990, 1996, and 1997 and had neglected, failed, or refused to pay the assessments he owed despite timely notice and demand. *See* Complaint, ¶¶ 10, 11. The government sought to foreclose a federal tax lien over a property in Salinas, Monterey County ("the Charter Oak property") that allegedly belongs to Mr. Beretta. *Id.* ¶¶ 28, 30. The Berettas concede that the government followed the proper procedure for foreclosing on a principal residence.

On November 21, 1986, Mr. Beretta transferred a joint tenancy ownership interest in the property to his daughter, Jennifer Beretta. *See* Decl. of Thomas Moore in Supp. of Gov't Mot. for

1 Summ. J. ("Moore Decl."), at ex. 5. Mr. Beretta conveyed his remaining interest in the property to Ms.
2 Beretta on October 24, 1991. *See id.*, at ex. 6. Ms. Beretta did not pay for either conveyance. *See id.*
3 at ex. 1, p. 3. The United States alleges that both conveyances were fraudulent, that Mr. Beretta
4 continues to own the Charter Oak property, and that the property is therefore subject to a federal tax lien
5 against Mr. Beretta.

6 Now before the Court are the motions of the United States and the Berettas for summary
7 judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id*.

The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

The Berettas contend that the validity of Mr. Beretta's transfer of the Charter Oak property to Ms. Beretta is immaterial because the United States has released its tax lien on the property. For the reasons stated below, the Court finds that the United States has not released its lien over property held by Ms. Beretta as Mr. Beretta's nominee and that factual questions remain as to the propriety of Mr. Beretta's transfer of the Charter Oak property.

**1.     The United States' Tax Lien on the Charter Oak Property is Valid**

Section 6321 of the Internal Revenue Code provides that the United States has a lien on all pRoperty belonging to an individual who is liable for unpaid taxes. 26 U.S.C. § 6321. The Supreme Court has given an expansive reading to this statutory language, stating that it "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Stonehill*, 83 F.3d 1156, 1158 (9th Cir. 1996) (citing *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985)). Unless another date is fixed by law, a lien imposed under § 6321 arises at the time the tax assessment is made and continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

The United States' lien against property held by Mr. Beretta arose on May 12, 1998, the date the tax assessments against him were made. *See* Def. Mot. for Summ. J., at ex. D. The Internal Revenue Service ("IRS") has filed two notices of federal tax lien that are relevant in this case. The first notice of federal tax lien was against "all property and rights to property" belonging to Mr. Beretta. It was filed with the Monterey County Recorder's Office on July 24, 2001 (No. 2001062641). *See* Decl. of Joseph Smith in Supp. of Gov't Opp. to Defs. Mot. for Summ. J. ("Smith Decl."), at ex. 18.

Mr. Beretta filed for Chapter 13 bankruptcy in Nevada on February 1, 2002. *See* Def. Mot. for

Summ. J., at ex. A. The IRS was included on his schedule of creditors. *See id.* Mr. Beretta did not include the Charter Oak property among his assets. The IRS disputed that representation and on April 2, 2002 filed a proof of claim indicating that it held a secured claim for $175,585.24, based on "the value of a certain real property that [Mr. Beretta] claims was transferred to his daughter several years before the bankruptcy case was filed." *See id.* (*In re William Beretta*, Case No. 02-50292 (Bankr. D. Nev. 2002)). On December 3, 2002, the bankruptcy court confirmed Mr. Beretta's Chapter 13 bankruptcy plan. *See id.* The confirmation order provided that "any discharge [Mr. Beretta] may receive as a result of completion of [his] Chapter 13 plan shall not impair the right of the IRS to recover its claim from any property to which its lien may have attached and which was not scheduled by [Mr. Beretta]." *See id.* In other words, any discharge Mr. Beretta received in bankruptcy would not affect the United States tax lien on the Charter Oak property.

On March 31, 2003, the IRS filed its second notice of federal tax lien, this one against all property that Jennifer Beretta held as her father's nominee. *See* Smith Decl., at ex. 19 (No. 2003037392). This lien was also filed in the Monterrey County Recorder's Office. *See id.*

On November 23, 2004, the Bankruptcy Court issued a "Discharge of Debtor" order. *See* Def. Mot. for Summ. J., at ex. A. On December 2, 2004, counsel for Mr. Beretta contacted the IRS and requested that the tax lien be released. *See id.* The IRS issued a "Certificate of Release of Federal Tax Lien" on June 29, 2005 stating that Mr. Beretta had satisfied the tax debts for 1987, 1988, 1989, 1990, 1996, and 1997. *See id*, at ex. F. The certificate states that the IRS lien for unpaid taxes for those years had been released. *See id.* It references only the lien over Mr. Beretta's property (No. 2001062641). *See id.*

The parties dispute the significance of this certificate. A certificate of release "shall be conclusive that the lien referred to in [the] certificate is extinguished." *See* 26 U.S.C. § 6325(f)(1)(A). Here, the certificate purports to release the federal tax lien over Mr. Beretta's interest in the Charter Oak property. Nonetheless, the government raises several arguments that the certificate offered by the Berettas does not prove that the tax lien was released.

First, the government contends that the Certificate of Release is not valid. Under 26 U.S.C. § 6325(a), a certificate of release of lien is issued when the tax liability "has been fully satisfied or has

4

become legally unenforceable," or the taxpayer furnishes a bond. According to the government, Mr. Beretta may not rely on the Certificate of Release because he has not provided proof that any of these three conditions set forth in § 6325(a) has occurred.

This argument has no merit. The government provides no authority establishing that § 6325(a) places a burden on taxpayers to prove the validity of a certificate of release. If a certificate of release is issued "erroneously or improvidently," the IRS may revoke the certificate and reinstate the lien. *See* 26 U.S.C. § 6325(f)(2). There is no indication in this case that the Certificate of Release proffered by Mr. Beretta has been revoked.

Second, the government argues that the Berettas have failed "to provide this Court with a file stamped copy of the alleged Certificate." The significance of a file-stamped copy of the certificate is not evident to the Court. The Berettas have provided this Court with a "taxpayer's copy" of IRS Form 668 (Z), "Certificate of Release of Federal Lien," which is presumably the version of the certificate most readily available to the taxpayer. *See* Def. Mot. for Summ. J., at ex. F. The government has provided no evidence casting doubt on the authenticity of this document. Accordingly, the Court finds that the copy of the taxpayer's version of Form 668 (Z) offered by the Berettas is sufficient to prove that the IRS issued a Certificate of Release.

Third, the government argues that the Certificate of Release did not discharge the lien over Mr. Beretta's property because it was never filed with the Monterey County Recorder's Office. *See* Smith Decl. ¶ 6. Section 6325(f)(1) provides that the effect of a certificate of release is to conclusively extinguish the lien referred to in the certificate, provided that the certificate "is issued pursuant to this section by the Secretary *and is filed in the same office as the notice of lien to which it relates* (if such notice of lien has been filed)" (emphasis added). Accordingly, so long as the certificate is (1) issued pursuant to § 6325 and (2) filed in the same recording office where the notice of lien was filed, the certificate extinguishes the tax lien. *See In re Cole*, 205 B.R. 668, 673 (Bkrtcy. D. Mass. 1997) (certificate operates as "conclusive" evidence that the lien referred to in the certificate is extinguished); *see also Freitag v. The Strand of Atlantic City*, 205 F.2d 778, 781 (3rd Cir. 1953) ("[T]his peremptory and sweeping statutory language can be avoided only by showing of actual fraud in the procurement of the discharge").

5

The parties do not dispute that notice of the lien on William Beretta's property was filed in the Monterey County Recorder's Office and that the Certificate of Release of that lien was *not* filed in the same office. The plain language of the statute requires that the certificate of release be filed in the relevant recording office in order to extinguish the lien referred to in the certificate. The Berettas respond that following the text of the statute would lead to an absurd result in this case. It is the IRS's responsibility to send a certificate of release to the appropriate recording office. *See* IRS Pub. 1468, *Guidelines for Notices of Federal Tax Liens and Centralized Lien Processing*, at 2. It would therefore be illogical, the Berettas argue, for Mr. Beretta to be prejudiced by the IRS's failure to file the Certificate of Release in the appropriate recording office.

The Court need not decide this issue because the parties agree that the Certificate of Release did not reference the second lien notice, which noticed an IRS lien over all property that Jennifer Beretta holds as her father's nominee (No. 2003037392). The parties also agree that the IRS is not required to release a valid tax lien solely because the underlying tax debt is discharged in bankruptcy. *See In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990); *see also Boyer v. Commissioner*, T.C. M. 2003-322, 2003 WL 22725293 *3 (Nov. 20, 2003 T.C.) ("It is well settled that although a certificate of tax lien release is conclusive that the lien is extinguished, it is not conclusive that the tax liability is extinguished."). Accordingly, there is no dispute that the Certificate of Release did not affect the United States tax lien over property Ms. Beretta holds as her father's nominee.

The Berettas argue, however, that the tax lien over property Ms. Beretta holds as her father's nominee is void because there was never a tax assessment against Ms. Beretta. This argument fails because this second notice of lien was not imposed as a security for taxes assessed against Ms. Beretta. Rather, the lien arose from Mr. Beretta's tax assessment. If Ms. Beretta holds the property as her father's nominee, the 1998 tax assessment against Mr. Beretta is therefore a sufficient basis for the United States to foreclose on the property. As discussed below, factual disputes remain as to whether Ms. Beretta holds the Charter Oak property as her father's nominee.

6

**2.     There Are Triable Issues of Fact as to Whether the Conveyance was Fraudulent and Whether Ms. Beretta is Mr. Beretta's Nominee**

The government argues that it is entitled to reduce to judgment the assessments made against Mr. Beretta in May 12, 1998 for unpaid income taxes. *See* 26 U.S.C. 7401 §§ 7401, 7402. The parties do not dispute the outcome of the Tax Court litigation. *See Beretta v. Commissioner*, 74 T.C.M. 1467 CCH (1997). Both sides agree that tax assessments totaling $35,421 were levied on Mr. Beretta; that notices and demands have been made on him; and that he has failed to pay his liabilities, which now total approximately $251,000. *See* Moore Decl., at exs. 7-12 (Certificates of Assessments and Payments for William Beretta). The parties disagree as to whether the United States may satisfy the tax assessment by forcing a judicial sale of the Charter Oak property.

### A.     Fraudulent Conveyance

The government contends that Mr. Beretta's conveyance of the Charter Oak property to his daughter was fraudulent and therefore may be set aside, leaving the property in Mr. Beretta's name and subject to the tax assessment. *See Towe Antique Ford Found. v. I.R.S.*, 791 F. Supp. 1450, 1457 (D. Mont. 1992). Where a taxpayer transfers property after taxes are due but prior to the filing of a tax lien, the United States may seek relief under the fraudulent conveyance laws of the state in which the property is located. *See id.* Accordingly, California law governs the substantive issues in this case.

California Civil Code § 3439.04(a) provides that a transfer made by a debtor is fraudulent "as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (3d Dist. 2005). Section § 3439.04(b) enumerates various factors, commonly referred to as "badges of fraud," that are relevant to the determination of whether actual fraudulent intent exists. The following factors are relevant in this case.

7

**(1) Whether the transfer or obligation was to an insider**

First, it is undisputed that the transfer was to an insider, i.e. the debtor's child. *See In re Serrato*, 214 B.R. 219, 229 (Bankr. N.D. Cal. 1997). Jennifer Beretta is Mr. Beretta's only child; he raised her as a single parent. Declaration of William C. Beretta in Supp. of Def. Mot. for Summ. J., at ex. A ("Beretta Decl."). She was fourteen in 1986, when Mr. Beretta granted her a joint tenancy interest in the property.

**(2) Whether the debtor retained possession, or control of the property transferred after the transfer**

Courts have found that living on a property after title is transferred and continuing to pay fees associated with it are indicative of continued control or possession of the property. *See United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1192 (9th Cir. 2004). Here, Mr. Beretta continued to live on the Charter Oak property after the 1986 transfer. There is a factual dispute about whether Mr. Beretta continued to live on the property after the 1991 transfer. He claims to have moved to Nevada. Beretta Decl., at ex. A, 2.[1] He kept keys to the house and had a room there. Moore Decl., at ex 3, 67:5-10. The property has been his primary residence since May 18, 2006, when he returned there after being injured in a car accident. Beretta Decl., at ex. A, 4. He claims to have returned to the Charter Oak property recuperate from the accident. *Id.*

Ms. Beretta paid no expenses related to the house after the first transfer, when she was a teenager. Moore Decl., ex. 4, 16:7-11. After the second transfer, the parties dispute the extent to which Mr. Beretta paid the expenses. The government contends that he "continues to pay a significant portion of the bills and expenses" but this characterization is not supported by the evidence cited. *See* Moore Decl, ex. 4:32; *id.* at ex. 1 ¶¶ 7-9. Mr. Beretta concedes that he has paid "some" of the taxes, insurance, and utilities on the property since 1986. *Id.* at ex. 1 ¶¶ 7-9.

---

[1] On October 22, 2008, Mr. Beretta offered proof of his Nevada's Driver's license, Nevada Identification card, Nevada Voter Registration, and IRS Form 1099R. The United States objected to this untimely submission of evidence. The Court finds that this evidence is not relevant to the issue of whether Mr. Beretta moved to Nevada shortly after the 1991 transfer because it establishes only that he was a Nevada resident by the late 1990s.

8

**(3) Whether the transfer was disclosed or concealed; (4) Whether the debtor absconded; (5) Whether the value of the consideration was reasonably equivalent to the value of the asset**

There is no dispute that both of the deeds were recorded and that Mr. Beretta did not abscond. Both of these factors weigh against an inference of fraud. It is also undisputed, however, that the Berettas did not exchange anything of value for Mr. Beretta's transfers of his interest.

**(6) Whether before the transfer was made, the debtor had been sued or threatened with suit**

The government does not contend that Mr. Beretta was threatened with suit before the 1986 transfer. The 1991 transfer is a different matter. On October 15, 1991, IRS special agents executed a search warrant of his house. Mr. Beretta acknowledges that the search put him on notice that he was being investigated by the IRS. Moore Decl., at ex. 3, 69:19-21. Nine days later, he transferred his remaining one-half interest in the property to his daughter. In February, 1993, Mr. Beretta, who had worked for the IRS for twenty-nine years, was charged with fourteen offences for improper conduct as a revenue officer with the IRS. *Id.* He pled guilty to four counts. *Id.*

**(7) Whether the transfer was of substantially all the debtor's assets**

The government does not contradict Mr. Beretta's testimony that at the time of the 1986 transfer, he had "a good job, substantial savings, and no particular debt excluding a First Trust Deed secured by the home." Beretta Decl., at ex. A, 2. The parties dispute the extent of Mr. Beretta's assets at the time of the 1991 transfer. Mr. Beretta claims that he "had no particular debt and [] substantial savings." Beretta Decl., at ex. A, p. 2. At deposition, he stated that he does not remember having any assets other than the house and mutual funds. Moore Decl., at ex. 3 p. 101:15-18.

**(8) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred**

The parties agree that Mr. Beretta had no tax liabilities at the time of the 1986 transfer. At the time of the second transfer, he had incurred tax liabilities for 1987-1990 totaling $35,421. *See* Moore Decl., at exs. 7-12. In light of the paucity of evidence regarding Mr. Beretta's overall financial status in 1991, it is not possible for the Court to assess whether this sum represented a "substantial" debt for

him.

**(9) Summary**

When Mr. Beretta granted his fourteen-year-old daughter a joint tenancy interest in the Charter Oak property, she did not pay for the property and Mr. Beretta continued living there and paying expenses. While these factors are consistent with a fraudulent intent, the Court cannot say that a trier of fact could not find the Berettas' explanation for the transfer credible: Mr. Beretta had recently had a heart attack and wanted to give some of his property to his only child. Decl. of William C. Beretta in Opp. to Pl. Mot. for Summ. J., at 2. Accordingly, there is a triable issue of material fact and the United States' motion for summary judgment as to whether Mr. Beretta had fraudulent intent during the 1986 transfer is DENIED.

The 1991 transfer, nine days after IRS special agents executed a search warrant on his home, is a closer question. At that time, he owed more than $35,000 in taxes. Having worked for the IRS for twenty-nine years, he was presumably aware that conveying the property to his daughter could shield it from his tax liabilities. Nonetheless, the extent to which he lived on the property after the transfer and paid its expenses, as well as the extent of his total assets at that time, are disputed. The Berettas contend that Ms. Beretta, then nineteen, had recently had a baby that she planned to raise as a single parent. *Id.* Mr. Beretta claims that he was planning to move to Nevada and wanted to provide for his daughter. *Id.* In light of the disputed circumstances of the 1991 transfer, the Court finds that the question of Mr. Beretta's intent is an issue for the trier of fact to decide and the United State's motion for summary judgment on this issue is DENIED.

**B.     Ms. Beretta's Status as a Nominee**

The government contends that Ms. Beretta is Mr. Beretta's nominee, or alter ego, and that the property she holds for him is subject to his tax liabilities. Property held by a nominee is subject to a tax lien attaching to property of the true owner. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977). Federal tax liens against a taxpayer may be foreclosed against property held by a nominee so long as the taxpayer is the equitable owner of the property. *See Wolfe v. United States*, 798 F.2d

1241, 1245 (9th Cir. 1986). Nominee status is determined by the degree to which a party exercises control over a property and its assets. *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 729 (8th Cir. 1989).

The factors relevant to determination of nominee status are essentially the same as those used to determine fraudulent intent: (1) No consideration or inadequate consideration paid by the nominee; (2) property placed in the name of the nominee in anticipation of a suit; (3) close relationship between transferor and the nominee; (4) failure to record conveyance; (5) retention of possession by the transferor; and (6) continued enjoyment by the transferor of benefits of the transferred property. *See id.*

The factual disputes detailed above establish that the Court cannot determine the issue of Ms. Beretta's status as a nominee on summary judgment. The parties have put forward contradictory evidence as to the degree to which Mr. Beretta retained possession of the property and continued to enjoy its benefits after the 1991 transfer. Accordingly, the United States' motion for summary judgment on this issue is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for summary judgment and DENIES defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: November 11, 2008

SUSAN ILLSTON
United States District Judge